IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:05CV00480

| | |
|---|---|
| Lisa E. Johnson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **BRIEF IN SUPPORT OF** |
| ) | **DEFENDANTS' MOTION FOR** |
| ) | **SUMMARY JUDGMENT (as to** |
| North Carolina Department of Health and ) | **Defendants County of Forsyth;** |
| Human Services ("DHHS"), and County of ) | **Forsyth County DSS; Linda Cole;** |
| Forsyth, and Forsyth County DSS ("FCDSS"), ) | **and Tanya McDougal)** |
| and Linda Cole, in her official and unofficial ) | |
| capacity, and Tanya McDougal, in her official ) | |
| and unofficial capacity, all jointly and severally, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## <u>STATEMENT OF THE CASE</u>

This is a case in which the plaintiff, Lisa E. Johnson, a former social worker for the

Forsyth County DDS submitted her written resignation on January 19, 2005.[1]  On May 31, 2005,

plaintiff filed a complaint against North Carolina Department of Health and Human Services

(hereafter "DHHS"),[2] Forsyth County, Forsyth County DSS, Linda Cole (former Program

Manager), and Tanya McDougal (the plaintiff's former supervisor).  The complaint asserts

claims of (1) alleged harassment due to her alleged disability in violation of Title 1 of the

Americans With Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964

("Title VII") and N.C. Gen. Stat. § 143-422.2 and § 168A; (2) constructive discharge in violation

of the ADA, Title VII, and N.C. Gen. Stat. § 143-422.2 and § 168A; (3) intentional infliction of

emotional distress; and (4) negligent infliction of emotional distress.  The defendants filed a

timely Answer, denying all relevant allegations, and asserting various affirmative defenses.  The

---

[1] Plaintiff's Depo. Exh. 1.
[2] DHSS was dismissed as a party to the action by Order of the Court on July 25, 2005.

defendants have filed a motion to dismiss contemporaneously herewith on May 1, 2006. The defendants now move for summary judgment as to plaintiff's claims.

## STATEMENT OF THE FACTS

At all times relevant to the matters set forth in her Complaint, plaintiff served as a Social Worker III with Forsyth County DSS. (McDougal Aff., ¶ 3). Plaintiff first worked for Forsyth County DSS between March 2002 and August 2002. (Plaintiff's Response to Interrogatory No. 4). She returned to Forsyth County DSS in March 2003 and worked as a Social Worker III doing case planning and management, as well as child protective service investigations. (Plaintiff's depo., p. 60). In early January 2004, she approached defendant Linda Cole (then Program Manager for Forsyth County DSS) and asked to be transferred to another Social Worker III position which had become vacant as a result of an employee retiring. (Plaintiff's depo., p. 60). The new position primarily involved conducting interstate compact home studies. (Plaintiff's depo., p. 58). Plaintiff testified that she had stress related migraines and believed that she would have less stress, and thus less migraines, in the new position. (Plaintiff's depo., pp. 59-61). Based upon her request, defendant Cole allowed her to transfer to the position in January 2004. (McDougal Aff. ¶5; Plaintiff's depo., pp. 58-59).

Although plaintiff kept the title of Social Worker III, the new position had different responsibilities. (McDougal Aff., ¶6). Plaintiff had a case load of interstate compacted home studies, which involved doing home studies on families before the children were placed into the home. Her additional responsibilities included counseling women that were pregnant about their options and whether they needed assistance, as well as managing a child custody caseload. (Plaintiff's depo., pp. 57-58). In her new position, plaintiff's direct supervisor was defendant Tanya McDougal; Ms. McDougal's direct supervisor was defendant Cole. (McDougal Aff., ¶4).

- 2 -

It is undisputed that throughout her entire employment with Forsyth County DSS, plaintiff was never subjected to discipline, or "written up." (Plaintiff's depo., pp. 15, 21, 70).

From September 7, 2004 through September 20, 2004, plaintiff took an FMLA leave. (McDougal Aff., ¶8). On or about October 8, 2004, plaintiff submitted a note from her physician to defendant Forsyth County DSS which stated "Ms. Johnson is released to work on a full time basis with no restrictions as of this date." (McDougal Aff. ¶9).

Because plaintiff's position at Forsyth County DSS was the only one like it in the agency, there were two job descriptions which captured plaintiff's responsibilities. (McDougal Aff. ¶6). On or about September 22, 2004, plaintiff presented defendants Linda Cole and Tanya McDougal a letter to the effect that she had reviewed both documents setting for her job description and decided that she was "capable of performing both of the positions based on her skills," and that the "question is can I assume both of the positions based on quantity (numbers) of cases that one would have to maintain in a case load." (McDougal Aff., Ex. B). Plaintiff was out of work on another FMLA leave from December 13, 2004 through December 27, 2004; the leave was extended at her request through January 15, 2005. (McDougal Aff., ¶10). She gave defendant Forsyth County DSS a note from her doctor dated January 13, 2005 which stated "This is to say that Ms. Johnson is released to return to work starting January 17, 2005 on a full time basis with no restrictions." (Plaintiff's depo. p. 49, Exh. 2).

Plaintiff alleges in her complaint that she was denied a reasonable accommodation. Complaint ¶8. Taken in the light most favorable to plaintiff, there was one conversation in fall 2004 with Ms. McDougal and Ms. Cole wherein the issue of an "accommodation" arose. According to plaintiff, she told them that she had a disability. (Plaintiff's depo., p. 17). According to plaintiff, she never filled out any paperwork requesting a reasonable

accommodation under the ADA. (Plaintiff's depo., p. 20). In the Fall of 2004, plaintiff "briefly" discussed with her supervisors – "in general" – the topics of disability and accommodation under the ADA. (Plaintiff's depo., pp. 18-20). The plaintiff was provided with paperwork, which she or her doctor could fill out if she wanted to put her employer on notice that she was disabled under the ADA, or that she was requesting a "reasonable accommodation" under the ADA. (Plaintiff's depo., pp. 18-20). However, neither plaintiff nor her doctor filled out this paperwork – nor any other paperwork – that would have notified the defendants that plaintiff was disabled, or requesting a reasonable accommodation, under the ADA. (Plaintiff's depo., pp. 18-20).

According to plaintiff's deposition testimony, the following events occurred in 2004 and January 2005 which plaintiff perceived as harassment: (1) in the fall of 2004, she states that defendant Cole told her during a meeting that she was an unreliable social worker[3], a liability to the agency, that she should seek other options with HR, and that Cole did not want to have any further conversations with plaintiff; (2) that she had to meet with her supervisor on a daily basis to prioritize her work assignments;[4] (3) that her alternative work schedule was revoked;[5] and (4)

---

[3] Plaintiff testified this remark was made in the context of "evidently if I couldn't do court, couldn't do the things that were expected of me, then I must be a liability or an unreliable social worker." (Plaintiff's depo., p. 16).

[4] Plaintiff testified that by the time she resigned, several months had passed since the alleged statements by Ms. Cole in the fall 2004 meeting, and she was no longer having to write down daily work assignments. (Plaintiff's depo., pp. 13-17, 24 and 45).

[5] On October 11, 2004, plaintiff was given an alternative work schedule which allowed her to work from seven a.m. to four p.m. rather than eight a.m. to five p.m. (Plaintiff's depo., p. 87, Ex. 5). Plaintiff did not believe she was "entitled" to work an alternative work schedule; instead, she considered the alternative work schedule to be at the discretion of her supervisor. (Plaintiff's depo., p. 85). She requested an alternative work schedule because the traffic from her residence was really bad in the morning. (Plaintiff's depo., p. 85). Plaintiff was given an alternative work schedule in October 2004. Note plaintiff testified she did not feel that she was being harassed at the time she received the alternative week schedule. (Plaintiff's depo., pp. 86-87). She testified that in January 2005 she was told that she would have to work normal hours because "with not many people being there [at seven o'clock to eight], they didn't know what I was doing, whether I was working or not." (Plaintiff's depo., p. 87). She also testified that other than the traffic, it made no difference to her whether she worked from seven a.m. to four p.m., or from eight a.m. to five p.m. (Plaintiff's depo., p. 88).

that plaintiff's supervisor would have a "look on her face" like "you know, you're disturbing me" when plaintiff knocked on the door. (Plaintiff's depo., pp. 13-17, 24, 45 and 125).

There was significant planning on plaintiff's part prior to her resignation on January 19, 2005. (Plaintiff's depo. pp. 45-46, 48, and 71). Plaintiff considered resigning as early as the end of October or early November 2004. (Plaintiff's depo. p. 12). Plaintiff typed her resignation letter; she does not remember if she typed it at work or home. (Plaintiff's depo., p. 45). Prior to her resignation, plaintiff allowed her sister to read the letter, and she also discussed her decision to resign with friends. (Plaintiff's depo., p. 46). She also consulted with an attorney before she resigned. (Plaintiff's depo., p. 71). Plaintiff describes her decision to resign as a "constant, every day kind of battle, should I do it now or wait or what." (Plaintiff's depo., p. 48).

According to plaintiff, on the day she resigned, she arrived at work at 8:00 a.m., planning to submit her typed resignation. (Plaintiff's depo., p. 63). The resignation letter, dated January 19, 2005, states:

> I have made a difficult decision, but one that will benefit me in the future. I would like to give Forsyth County DSS an official notice of my resignation from my position on Friday, January 21, 2005. I thank you for the opportunity and the experience working with Forsyth County DSS. Sincerely, Lisa E. Johnson.

(Plaintiff's depo., Exhibit 1.) Plaintiff brought the letter to her supervisor's office (defendant Tanya McDougal) and "never told her how I felt or anything." (Plaintiff's depo., p. 64). Ms. McDougal told her words to the effect that she didn't have to do anything for the rest of the week since she was leaving. (Plaintiff's depo., p. 65). Plaintiff then proceeded to catch up on some things that she needed to do, and she shredded documents she did not need. (Plaintiff's depo., p. 66). After submitting her resignation on Wednesday, plaintiff continued to come to work for the rest of the week. (Plaintiff's depo. pp. 65-67).

On February 11, 2005 plaintiff filed a Charge of Discrimination with the EEOC; she received a "Dismissal and Notice of Rights" on or about March 1, 2005. (Plaintiff's depo., Ex. 6). Plaintiff filed this Complaint on May 31, 2005. At the time of her deposition of March 24, 2006, plaintiff was employed full time as a social worker with Iredell County DSS. (Plaintiff's depo., p. 98).

## QUESTIONS PRESENTED

I.      Whether plaintiff's claims under the American with Disabilities Act of 1990 ("ADA") fail as a matter of law?

II.     Whether plaintiff's Title VII and ADA claims against defendants Forsyth County and McDougal are barred because they were not named in the EEOC charge?

III.    Whether plaintiff cannot pursue claims under Title VII and the ADA because she failed to pursue her administrative remedies and thus this Court lacks jurisdiction?

IV.     Whether plaintiff's claims of intentions and negligent infliction of emotional distress fail as a matter of law?

## ARGUMENT

## I.      PLAINTIFF'S CLAIMS UNDER THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA") FAIL AS A MATTER OF LAW.

### A.      Defendants Are Entitled to Summary Judgment because Plaintiff Was Not Disabled within the Meaning of the ADA.

The defendants are entitled to judgment as to plaintiff's claims under the ADA because plaintiff is not "disabled" within the meaning of the ADA. Furthermore, there was no constructive discharge or other adverse employment action, nor was there harassment.

#### 1.      To Prevail on Her ADA Claims, Plaintiff Must Show that She is Disabled under the Meaning of the Statute.

Plaintiff alleges that the defendant failed to accommodate her "disability" under the ADA and that she was constructively discharged, discriminated against and harassed because of her

- 6 -

"disability."   (Complaint ¶¶ 11, 14-15).   Her constructive discharge, discrimination and harassment claims are all predicated upon a finding of disability.  See 42 U.S.C. § 12112(a).

### 2. Plaintiff Is Not Disabled under the ADA.

The ADA defines a "disability" as "(A) a physical or mental impairment that <u>substantially limits</u> one or more of the <u>major life activities</u>[6] of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment."  42 U.S.C. § 12102(2) (emphasis added).  As stated by the Supreme Court, to qualify as disabled under the U.S.C. § 12102(2)(A) of the ADA, a plaintiff must show that (1) she suffers from a physical or mental impairment; (2) which affects a "major life activity," (3) to a "substantial" degree.  See <u>Bragdon v. Abbott</u>, 524 U.S. 624, 631, 118 S.Ct. 2196, 2202, 141 L.Ed.2d 540 (1998).

The determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case.  See <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).  Whether a plaintiff is disabled "is a question of law for the court, not a question of fact for the jury."  <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 268 (4th Cir.2001).  "[I]n the absence of proof of how an individual is substantially limited in performing a major life activity by his or her alleged impairment, and to what degree, <u>it is appropriate to dismiss the claim as a matter of law</u>."   <u>Jones v. Family Health Center, Inc.</u>, 323 F.Supp.2d 681 (D.S.C. 2003), <u>affirmed</u>,  98 Fed.Appx. 959, Slip Copy, 2004 WL 1238611 (4th Cir., June 4, 2004) (unpublished opinion, attached as Exhibit A pursuant to L.R. 7.2(c)), <u>citing</u> <u>EEOC v. Sara Lee Corp.</u>, 23 F.3d 349, 252-53 (4th Cir. 2001)) (emphasis added).

---

[6] Examples of "major life activities" are "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).  As defined by the Supreme Court:  "Major life activities" thus refers to those activities that are of central importance to daily life.  In order for performing manual tasks to fit into this category—a category that includes such basic abilities as walking, seeing, and hearing – the manual tasks in question must be central to daily life. *Toyota Motor Manufacturing, Ky., Inc. v. Williams,* 534 U.S. 184, 197, 122S.Ct. 681, 691, 151 L.Ed.2d 615 (2002).

Plaintiff alleges in her Complaint that she is bipolar and has severe migraines. (Plaintiff's Complaint, ¶ 9). In the absence of supporting medical facts, however, such sentiment on the part of the plaintiff does not confer protection under the ADA. As stated by the Supreme Court, "merely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor Manufacturing, Ky., Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). A plaintiff must demonstrate that the impairment substantially limits a major life activity. See 42 U.S.C. § 12102(2)(A). The Fourth Circuit has held that the phrase "substantially limits"[7] sets a threshold that excludes minor impairments from coverage under the ADA." EEOC v. Sara Lee Corp., 237 F. 3d at 352.

In this case, the undisputed evidence shows that plaintiff's alleged health problems -- bipolar disorder and migraines -- do not substantially limit one or more of her major activities sufficient to constitute a disability under the ADA. First, plaintiff testified in her deposition that in October/November of 2004 she was given a list of all of her job description requirements and was able to perform all of them.[8] (Plaintiff's depo., p. 56; McDougal Aff., ¶7). Second, plaintiff testified she never returned the paperwork sent to her by HR that she understood was necessary to evaluate whether she would be entitled to a reasonable accommodation. (Plaintiff's depo., p. 20). As such, she did not present defendant with supporting medical facts to conclude whether she was disabled under the ADA. Third, in October 2004, plaintiff presented defendant DSS a

---

[7] "Substantially limits" is defined under the Code of Federal Regulations to mean: (i) Unable to perform a major life activity that the average person in the general population can perform; or (ii)Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(i)-(ii). *See also Toyota Motor Manufacturing, Ky., Inc. v. Williams*, 534 U.S. at 197, 122 S.Ct. at 691 (stressing that the ADA's "substantially limits" requirement indicates that an impairment must interfere with a major life activity "'considerabl[y]' or 'to a large degree'" and that the word 'substantial' clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities.")

[8] Plaintiff testified she could perform all of her job functions; it was simply the amount of work that she felt like she could not do. (Plaintiff's depo., p. 56).

note from her doctor that stated she could work with no restrictions. (McDougal Aff., ¶ 8). Moreover, when plaintiff returned to work in January 2005, less than a week prior to her resignation, she also presented a note from her doctor which said she was released to work with no restrictions. (Plaintiff depo. p. 50; Ex. 2 to Plaintiff's depo.) Fourth, although plaintiff has testified that she believes she still suffers from bipolar disorder (and anxiety), she is presently working full time as a social worker with case management and planning responsibilities. (Plaintiff's depo., p. 110).

In sum, by her own admission, plaintiff had no physical or mental impairment that substantially limited one or more of her major life activities; moreover, she was able to perform her job. Accordingly, plaintiff is not disabled under 42 U.S.C. § 12102(2)(A); consequently, her claims for failure to make reasonable accommodations, constructive discharge, harassment and discrimination under the ADA fail as a matter of law. Plaintiff has not produced any evidence of the type of accommodations she wanted or could have benefited from. She cannot now assert that she was denied a reasonable accommodation when, according to her own testimony, she did not fill out the paperwork to request an accommodation. (Plaintiff's depo., p. 20). In summary, plaintiff has failed to establish that she was disabled, that she sought a reasonable accommodation, that she was denied a reasonable accommodation, or that she was subjected to any type of harassment, whether based on disability or otherwise.

3. **Plaintiff's Discrimination Claim Also Fails as a Matter of Law Because She Cannot Establish Constructive Discharge or Other Adverse Employment Action.**

To make a *prima facie* case of discrimination, "plaintiff must show (1) that she has a disability; (2) that she is a 'qualified individual' for the employment in question; and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability."

- 9 -

E.E.O.C. v. Stone Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir. 2000). There is no dispute that plaintiff is qualified. However, the evidence does not establish that she was disabled or that any adverse employment action was taken against her because of her disability.

As stated above, plaintiff has failed to show that she has a disability. Moreover, as shown below, plaintiff was not constructively discharged. In order to establish a constructive discharge, plaintiff must show that her employer "deliberately made [her] working conditions intolerable in an effort to induce [her] to quit." Matvia v. Bald Head Island Management, Inc., 259 F.3d 261, 272 (4th Cir. 2001); Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1354 (4th Cir. 1995). Thus, in order to prove a constructive discharge, a plaintiff must show two elements: (1) that the employer deliberately took actions which were intended to force the plaintiff to quit; and (2) that plaintiff's working conditions were intolerable. See Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1132 (4th Cir. 1995); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985). In the instant case, plaintiff cannot prove either element; consequently, plaintiff's contention that she was constructively discharged fails as a matter of law.

For purposes of establishing a constructive discharge, "[d]eliberateness exists only if the actions complained of were intended by the employer as an effort to force the plaintiff to quit." Matvia, supra; Taylor, supra. In the instant case, plaintiff has brought forward no evidence that defendants deliberately took actions which were intended to force plaintiff to resign. Moreover, plaintiff cannot as a matter of law, show that her working conditions were intolerable.

When measuring the tolerability of plaintiff's working conditions, the courts must use an objective standard of whether a reasonable person in plaintiff's position would have felt compelled to resign. Matvia, supra; Taylor, supra. An employee's subjective perceptions do not govern a claim of constructive discharge; part of an employee's obligation is to not assume worst

- 10 -

and jump to conclusions too quickly.  <u>Rankin v. Greater Media, Inc.</u>, 28 F.Supp.2d 331 (D. Md. 1997).  The Fourth Circuit has made is clear that "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."  <u>Carter v. Ball</u>, 33 F.3d 450, 459 (4th Cir. 1994).  <u>See also</u> <u>Sharafeldin v. Maryland</u>, 131 F.Supp.2d 730, 739 (D. Md. 2001) ("A discriminatory animus cannot be inferred from conduct of supervisors which a plaintiff may deem to be inconsiderate").  The courts have also noted that a plaintiff "cannot show intolerability simply by showing that she felt compelled to resign, or even that resignation was her best option."  <u>Black v. The Retired Officers' Assoc.</u>, 181 F.3d 86, 1999 WL 351157, *3 (4th Cir. 1999) (unpublished opinion attached as Exhibit B pursuant to L.R. 7.2(c)).  Furthermore, "the mere fact that an employee was required to work under stressful conditions is insufficient to establish a constructive discharge claim. . ."  <u>DeWitt v. Mecklenburg County</u>, 73 F.Supp.2d 598, 600 (W.D.N.C. 1999).  The Fourth Circuit has cautioned that district courts must "carefully cabin" constructive discharge claims because "the claim of constructive discharge is so open to abuse by those who leave employment of their own accord."  <u>Paroline v. Unisys Corp.</u>, 879 F.2d 100, 114 (4th Cir. 1989) (Wilkinson, J., concurring in part and dissenting in part), <u>adopted en banc</u>, 900 F.2d 27, 28 (4th Cir. 1990).

In the instant case, plaintiff's complaints amount to gripes about being unfairly criticized and/or about difficult or unpleasant working conditions.  As a matter of law, plaintiff's complaints fail to establish that her working conditions were "intolerable."  <u>See</u>, <u>e.g.</u> <u>Carter v. Ball</u>, <u>supra</u>.  <u>See also</u>, <u>e.g.</u>, <u>Williams v. Grant Food, Inc.</u>, 370 F.3d 423 (4th Cir. 2004) (plaintiff's complaint did not state a claim for constructive discharge where plaintiff alleged that her supervisors yelled at her, told her she was a poor manager, and required her to work with an

injured back); <u>Rankin</u>, <u>supra</u> (plaintiff's allegations that she was demoted, criticized, that her space heater was removed, and that her sales efforts were interfered with, was held insufficient to show that her working conditions were "intolerable").

Moreover, it is significant that plaintiff contemplated resignation for a period of time prior to submitting her resignation letter, and that she remained on the job after submitting the notice of resignation. (Plaintiff's depo., pp. 45-46, 48, 71). These facts also demonstrate that plaintiff was not "constructively discharged." <u>See</u>, <u>e.g.</u>, <u>Gilliam v. Principi</u>, 2003 WL 2006844 (M.D.N.C. 2003) (unpublished opinion attached as Exhibit C pursuant to L.R. 7.2(c)) (where plaintiff submitted resignation, and then remained an employee for a period of time, court stated "this behavior is fundamentally at odds with someone who finds his working conditions so intolerable that he feels compelled to resign"); <u>Roeder v. Hendricks Community Hosp.</u>, 2001 WL 1168151 (S.D. Ind. 2001) (noting that one employee wrote her resignation letter two days prior to resignation undermined her claim that she felt compelled to resign). In short, as shown by the arguments above, plaintiff's claim for constructive discharge fails as a matter of law.

Just as plaintiff cannot establish constructive discharge, she also cannot establish any other type of discrimination as there have been no "adverse employment actions." The Fourth Circuit has defined "adverse employment actions" as "ultimate employment decisions such as hiring, granting leave, discharge, promoting and compensating." <u>Gilliam</u> at *6, citing <u>Page v. Bolger</u>, 645 F.2d 227, 233 (4th Cir. 1981) and other cases. Here, no adverse employment action was taken against plaintiff: she lost no income; she was not refused leave, she was not refused a

Case 1:05-cv-00480-NCT-WWD   Document 28   Filed 05/01/06   Page 12 of 21

promotion, nor was she demoted. Cancellation of her alternate work schedule cannot, as a matter of law, constitute adverse employment because it is not an ultimate employment decision.[9]

### 4. Plaintiff's Harassment Claim Under the ADA Fails As A Matter of Law

In order to make out a claim for hostile work environment harassment under the ADA, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; and (4) the harassment was sufficiently severe and pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability to the employer. E.E.O.C. v. Circuit City Stores, 2005 WL 1474025, *3 (M.D.N.C. 2005) (unpublished opinion attached as Exhibit D pursuant to L.R. 7.2(c)), citing Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001). Plaintiff's ADA harassment claim fails because, as discussed above, she was not disabled. Moreover, she was not subjected to harassment. Further, even if she had been subjected to harassment, there is no basis to impute liability to her employer.

### a. Even assuming arguendo that plaintiff was disabled, there was no harassment as a matter of law.

In order for a plaintiff to make out a claim for hostile work environment harassment, the plaintiff must show that "the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment." EEOC v. Circuit City, supra. Furthermore,

> [t]he environment must be both subjectively and objectively hostile. A work environment is subjectively hostile if the plaintiff perceived it as hostile and objectively hostile if a reasonable person would have so perceived it. (Internal citations omitted.) A hostile environment claim must be evaluated based on the "totality of the circumstances." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001). Factors that may be considered include, but are not limited to, "the frequency of the discriminatory conduct; its severity; whether it is

---

[9] Indeed, plaintiff herself testified the only effect it had upon her was that she would not have the benefit of avoiding traffic on the way to work. (Plaintiff's depo., p. 88).

- 13 -

> physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Systems Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

Id. at *5.  In the instant case, as a matter of law, plaintiff was not subjected to a hostile work environment harassment.  Plaintiff's Complaint alleges that she was harassed by being told that she was a liability to the agency and that her supervisors "visited her office."  (Complaint, ¶ 8.) In her deposition testimony, plaintiff testified that she perceived the following events as harassment:  (1) in the fall of 2004, she states that defendant Cole told her, in a meeting with Ms. McDougal, that she was an unreliable social worker[10], a liability to the agency, that she should seek other options with "the county HR" and that defendant Cole didn't want to have any further conversations; (2) that she had to meet with her supervisor on a daily basis to prioritize her work assignments;[11] and (3) that her alternative work schedule was cancelled.  (Plaintiff's depo., pp. 13-17, 24-25, 86-88).

None of these events are frequent, offensive, severe, physically threatening or humiliating to the extent they would constitute harassment to a reasonable person.  None of these facts, if true, are "sufficiently severe or pervasive to alter a term, condition or privilege of employment." EEOC v. Circuit City, 2005 WL 1474025, at 5 (M.D.N.C. 2005), citing Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001).  Under the totality of the circumstances test set forth in Harris, these allegations are not frequent or severe; they would not have unreasonably interfered with work performance; and they are neither physically threatening or humiliating.  At most, these allegations of events were merely offensive to Ms. Johnson, who characterizes herself as

---

[10] Plaintiff testified this remark was made in the context of "evidently if I couldn't do court, couldn't do the things that were expected of me, then I must be a liability or an unreliable social worker."  (Plaintiff's depo., p. 16).
[11] Plaintiff testified that by the time she resigned several months had passed since the alleged statements by Ms. Cole in the fall 2004 meeting and she was no longer having to write down daily work assignments.  (Plaintiff's depo., pp. 13-17, 24 and 45).

- 14 -

someone who "gets sensitive." (Plaintiff's depo., p. 26). Accordingly, plaintiff's harassment claim under the ADA fails as a matter of law.

Even if a hostile work environment had been present, there was no basis to impute liability to Forsyth County DSS as the employer. As discussed above, no adverse employment action was taken against plaintiff. Thus, even if plaintiff could establish the elements of a hostile work environment were present, defendant Forsyth County DSS would assert a defense to liability subject to proof by a preponderance of the evidence that "(1) the employer exercised reasonable care to prevent and correct promptly and . . . harassing behavior, and (2) "plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by employer or to avoid harm otherwise." E.E.O.C. v. Circuit City at *5, citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 118 S. Ct. 2275, 1141 L. Ed. 2d 662 (1998).

Here, defendant can establish as a matter of law that it exercised reasonable care to prevent and correct harassing behavior, and that plaintiff unreasonably failed to avoid harm. First, defendant instituted an anti-harassment policy and a complaint procedure. (Plaintiff's depo. Ex. 3, McDougal Aff. ¶12). Accordingly, defendant was exercising reasonable care to prevent and correct harassing behavior.[12] See Brown v. Perry, 184 F.3d. 388, 395 (4th Cir. 1999) (that an employer has instituted and maintains an "anti harassment policy and an adequate complaint procedure" is relevant in establishing the first element.)

Second, assuming arguendo that plaintiff was harassed, plaintiff did not act reasonably. There is no evidence that she complained to anyone about any alleged "unwelcome visits" to her office or that Defendant McDougal was requiring her to make daily work assignments. There is similarly no evidence that she complained to anyone about having her alternative work schedule

---

[12] Note plaintiff signed a receipt for an employee handbook as recently as October 2004. (Plaintiff's depo., pp. 78-79).

- 15 -

being cancelled. When she was sent paperwork to fill out regarding whether she had a disability which required a reasonable accommodation, plaintiff testified that she did not return it. (Plaintiff's depo., p. 20). Thus, because defendant DSS had instituted procedures to prevent and correct harassment, and plaintiff failed to avail herself of these procedures, plaintiff's claim of harassment fails as a matter of law.

## II.   PLAINTIFF'S TITLE VII AND ADA CLAIMS AGAINST DEFENDANTS FORSYTH COUNTY AND MCDOUGAL ARE BARRED BECAUSE THEY WERE NOT NAMED IN THE EEOC CHARGE.

In plaintiff's EEOC Form 5, Charge of Discrimination, plaintiff does not mention Title VII, nor does she name Forsyth County or Tanya McDougal as respondents in her EEOC charge. As held by the Fourth Circuit in Causey v. Balog, 162 F.3d 795 (4th Cir. 1998):

> Under Title VII and the ADEA, a civil action may be brought only "against the respondent named in the charge." 42 U.S.C. §2000e-5(f)(1) (1994); 29 U.S.C. § 62(e)(1994)….We therefore agree with the district court's conclusion that the individual defendants may not be held personally liable for any alleged violations of Title VII or the ADEA.

Causey, 162 F.3d at 800-801 (emphasis added).

Like the ADEA, the ADA requires that a civil action be brought only against the respondent named in the charge. Julia v. Janssen, Inc., 92 F.Supp.2d 25 (D.P.R. 2000) (Claims against former employee's supervisor under the ADA must be dismissed where the supervisor was not named in the EEOC charge). Accordingly, because plaintiff failed to name the County of Forsyth or Tanya McDougal as respondents in her EEOC charge, they may not be held liable on any Title VII and/or ADA violations and plaintiff's claims against them are barred as a matter of law.

Also, plaintiff did not allege any Title VII violations in her EEOC claim. As set forth in Long v. Bectin, Dickinson and Company, 2006 WL 473881 (M.D.N.C. 2006):

- 16 -

[P]laintiff's EEOC charge alleged discrimination only on the basis of age, and plaintiff therefore failed to exhaust his administrative remedies with respect to any alleged gender or disability discrimination.  See, Bryant v. Bill Atlantic Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002) ("Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC.")  Therefore, to the extent plaintiff purported to bring his claims pursuant to Title VII or the ADA for gender discrimination, Defendant's Motion to Dismiss with be granted, and the Title VII and ADA claims will be dismissed.

Id. at 3881.  Accordingly, plaintiff's Title VII claims also fail as a matter of law.


### III.  PLAINTIFF CANNOT PURSUE CLAIMS UNDER TITLE VII AND THE ADA BECAUSE SHE FAILED TO PURSUE HER ADMINISTRATIVE REMEDIES AND THUS THIS COURT LACKS SUBJECT MATTER JURISDICTION.

The plaintiff, an employee of Forsyth County DSS, was covered under the State Personnel Act.  See N.C.G.S. § 126-5(a)(2)(a).  Since the State Personnel Act covered plaintiff, she had the right to file a contested case in the North Carolina Office of Administrative Hearings, to remedy unlawful employment actions.  It is undisputed that plaintiff has never pursued her State law claim under the State Personnel Act.  (Plaintiff's depo., p. 20).  Consequently, this Court has no subject matter jurisdiction of plaintiff's Title VII and ADA claims.  Davis v. North Carolina Dept. of Correction, 48 F.3d 134 (4th Cir. 1995) ("complainants are required to resort to State and local remedies" before they can proceed to the EEOC, and then to federal court, on their claims if claims of discrimination under federal law).[13]  Because plaintiff failed to pursue her remedies under the State Personnel Act, this court does not have jurisdiction over her ADA and Title VII claims.

---

[13] In Metts v. N.C. Dept. of Revenue, 230 F.3d 1353 (4th Cir. 2000) (unpublished opinion, attached as Exhibit E pursuant to L.R. 7.2(c)), the plaintiff was a former employee who alleged defendant failed to accommodate his disability.  The plaintiff never instituted an action with the North Carolina Office of Administrative Hearings pursuant to Chapter 126.  The Fourth Circuit affirmed the dismissal of plaintiff's complaint, citing Davis, and stating as follows:  "Because the OAH never commenced proceedings under the applicable State law, Davis never had a charge properly pending before the EEOC.  He thus was never entitled to a right to sue letter from the EEOC and consequently the federal district court had no jurisdiction over his claim."  Davis, 48 F.3d at 149-140.

- 17 -

## IV. PLAINTIFF'S CLAIMS OF INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FAIL AS A MATTER OF LAW.

Plaintiff asserts claims for intentional and negligent infliction of emotional distress on the basis that she was "harassed" by McDougal and Cole. Complaint ¶ 11. The specific instances of harassment to which plaintiff has testified are set forth in the "Facts" section.

"The essential elements of an action for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) which is intended to and does in fact; (3) cause severe emotional distress." Waddell v. Sparks, 331 N.C. 73, 92, 414 S.E.2d 22, 27 (1992), quoting Dickens v. Puryear, 302 N.C. 437, 276 S.E.2d 325 (1981). Plaintiff has failed to establish all these elements as a matter of law.

In asserting a claim for intentional infliction of emotional distress, a plaintiff must allege acts "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." In the light most favorable to plaintiff, it would be impossible to construe plaintiff's allegations to be extreme or atrocious. Moreover, the standard for infliction of emotional distress is even higher because of the alleged employment relationship between plaintiff and all of the defendants. "It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim for intentional infliction of emotional distress." Thomas v. Northern Telecom, 157 F.Supp.2d 627, 635 (M.D.N.C. 2000); see also Swinson-Hill v. Southtech Plastics, Inc., 2002 WL 1972060, *6 (E.D.N.C. 2002)(unpublished opinion, attached as Exhibit F, pursuant to L.R. 7.2(c)) (noting "as a general rule, workplace tensions and disagreements seldom create a sound basis for a claim of intentional infliction of emotional distress").

- 18 -

The facts asserted by plaintiff, taken as true for the purposes of this motion, fall short of the extreme and outrageous conduct which is required in order to state an intentional infliction claim. See, e.g., Atkins v. USF Dugan, Inc., 106 F.Supp.2d 799, 810-11 (M.D.N.C. 1999) (dismissing intentional infliction claim where plaintiff alleged discriminatory termination); Swaim v. Westchester Academy, 170 F. Supp. 2d at 584 (dismissing intentional infliction claim where plaintiff alleged hostile treatment and discriminatory termination by supervisor); Hogan, 79 N.C. App. at 493, 340 S.E.2d at 123 (supervisor's shouting at plaintiff, calling her names, and throwing menus at her was not extreme and outrageous conduct); Efird v. Riley, 342 F.Supp.2d 413 (M.D. N.C. 2004) (plaintiff deputy sheriff failed to state a claim for intentional infliction of emotional distress wherein plaintiff alleged she was sexually harassed and subjected to offensive language and gestures and her supervisor did nothing but retaliate by firing her); Guthrie v. Conroy, 152 N.C. App. 15, 24, 67 S.E.2d 403, 410 (2002) (Even where a co-worker touched and rubbed another employee's neck and shoulders, placed a lampshade on her head while she slept at her desk, remarked about wanting to see her in a wet T shirt, and placed a Styrofoam "peanut" between the legs of a "naked man" statuette, the conduct was not found extreme or outrageous).

Furthermore, plaintiff has brought no evidence that the defendant intended to cause, or did cause, severe emotional distress. Plaintiff's claim for intentional infliction of emotional distress fails for these additional reasons.

Plaintiff's negligent infliction claim fails because the sole asserted grounds for that claim can only be the alleged discriminatory acts by various defendants, acts which are by definition intentional and therefore cannot support a negligent infliction claim. The negligent infliction claim against any defendants in their individual capacities also fail as a matter of law because there is no evidence of the very essence of a negligent infliction claim – that in particular, a

- 19 -

named defendant <u>negligently</u> engaged in some identified conduct. <u>See</u> <u>Johnson v. Ruark</u> <u>Obstetrics & Gynecology Assocs. P.A.</u>, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). By definition, discrimination is intentional conduct. As such, allegations of discrimination cannot serve as the basis for a negligent infliction claim. <u>Thomas v. Northern Telecom, Inc.</u>, 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000) (citing <u>Mitchell v. Lydall, Inc.</u>, 1994 U.S. App. LEXIS 2177 at 9-10 (4th Cir. 1994) (dismissing negligent infliction claim based upon allegations of retaliation and disability and race discrimination)). Accordingly, the claims against all defendants for negligent infliction of emotional distress fail as a matter of law.

The plaintiff has utterly failed to establish any of the elements of negligent infliction of emotional distress. Accordingly, plaintiff's claims for negligent infliction of emotional distress, as well as intentional infliction of emotional distress, fail as a matter of law.

## CONCLUSION

Based on the foregoing arguments and authorities, it is respectfully submitted that defendants' motion for summary judgment should be granted and that plaintiff's claims be dismissed as a matter of law.

Respectfully submitted, this the 1st day of May, 2006.

> **/s/ Mary N. Craven**
> James R. Morgan, Jr.
> N. C. State Bar No. 12496
> Mary N. Craven
> N.C. State Bar No. 23058
> *Counsel for Defendants*
> WOMBLE CARLYLE SANDRIDGE & RICE,
> *A Professional Limited Liability Company*
> One West Fourth Street
> Winston-Salem, NC 27101
> (336) 721-3600
> E-mail: jmorgan@wcsr.com
> E-mail: mcraven@wcsr.com

- 20 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 1, 2006, I electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Angela Newell Gray, Esq.

By:    /s/ Mary Nell Craven
       Mary Nell Craven
       N.C. State Bar No. 23058
       WOMBLE CARLYLE SANDRIDGE & RICE,
       *a Professional Limited Liability Company*
       One West Fourth Street
       Winston-Salem, NC  27101
       Telephone: (336) 721-3735
       Facsimile: (336) 733-8427

WINSTON 2335067v4