IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LISA E. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05CV00480 |
| | ) | |
| NORTH CAROLINA DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES | ) | |
| ("DHHS"); COUNTY OF FORSYTH; | ) | |
| FORSYTH COUNTY DEPARTMENT OF | ) | |
| SOCIAL SERVICES ("FCDSS"); LINDA | ) | |
| COLE, in her official and unofficial capacity; | ) | |
| TANYA McDOUGAL, in her official and | ) | |
| unofficial capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION

TILLEY, District Judge

This matter is now before the Court on Defendants' Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [Doc. # 23] and Defendants' Motion for Summary Judgment [Doc. # 26]. For the reasons set forth below, Defendants' Motion to Dismiss Ms. Johnson's ADA claims for lack of subject matter jurisdiction [Doc. #23] is DENIED; Defendants' Motion to Dismiss Ms. Johnson's Title VII claims for failure to state a claim [Doc. # 23] is GRANTED[1]; Defendants' Motion to Dismiss Forsyth County as a party [Doc. #23]

---

[1] By failing to respond to Defendants' Motion to Dismiss her Title VII claims for failure to state a claim, Ms. Johnson appears to have conceded a pleading deficiency by not alleging discrimination based on race, color, religion, sex, or

is DENIED AS MOOT; and Defendants' Motion for Summary Judgment on Ms. Johnson's ADA claims [Doc. #26] is GRANTED. All state law claims are DISMISSED because the Court declines to exercise supplemental jurisdiction.

I.

The facts in the light most favorable to Ms. Johnson are as follows. Ms. Johnson was diagnosed with bipolar disorder in 1999. (Johnson Depo. at 106.) At all times relevant to the matters in this case, Ms. Johnson worked as a Social Worker III with the Forsyth County Department of Social Services ("DSS"). Ms. Johnson initially worked with Forsyth County DSS between March and August 2002. She returned to work with Forsyth County DSS in March 2003 and performed case planning and management and child protective service investigations. (Johnson Depo. at 60.) Forsyth County DSS experienced a staff shortage in child protective services beginning in September 2003, which caused Ms. Johnson's workload to increase significantly. The increased workload and resulting stress caused Ms. Johnson to suffer from chronic migraine headaches; she notified her supervisors of her problem in October 2003.

In January 2004, Ms. Johnson transferred to a different Social Worker III position that she believed would be less stressful and cause fewer migraines. (Johnson Depo. at 60-61.) Her new responsibilities included conducting on-site

---

national origin. Accordingly, Defendants' Motion to Dismiss is GRANTED and Ms. Johnson's Title VII claims are DISMISSED.

2

home evaluations prior to child placement, troubled pregnancy counseling, and managing a child custody caseload. (Johnson Aff. ¶ 3; Johnson Depo. at 57-58.) In her new position, Ms. Johnson reported to Tanya McDougal, the Manager of Child Services; Ms. McDougal reported to Linda Cole, the Director of Child Services.

Even though Ms. Johnson was given a new position, her workload continued to increase. Between approximately April and August 2004, Ms. Johnson's co-worker, Alicia Weaver, went on maternity leave and the responsibility for all of Ms. Weaver's cases shifted to Ms. Johnson. The increased workload and resulting stress again caused Ms. Johnson to suffer emotional problems. (Johnson Aff. ¶ 4.) Ms. Johnson believed that the increased stress and anxiety would make it more difficult for her to keep her bipolar disorder under control. (Johnson Aff. ¶ 5.) In September 2004, Ms. Johnson's depression and anxiety reached such a level that she was taken to the emergency room and prescribed various medications, including Wellbutrin, Topamax, and Ambien. Ms. Johnson subsequently took two weeks of leave under the Family Medical Leave Act ("FMLA") from September 7 until September 20, 2004.

Upon her return to work, Ms. Johnson informed her supervisors that she was capable of performing the functions and skills required in her position, but expressed concern over her increasing caseload. (Johnson Depo. at 56.) Ms. Johnson was out of work again toward the end of September 2004 and was

3

released by her physician "to work on a full time basis with no restrictions" on October 8, 2004.

In the Fall of 2004, Ms. Johnson informed her supervisors that she suffered from anxiety and depression and requested a reduction in her caseload. (Johnson Depo. at 17-18.) Ms. Cole informed Ms. Johnson that she needed to have a doctor verify the necessity of the requested accommodation. (Johnson Depo. at 17-18.) Ms. Cole provided Ms. Johnson with paperwork to fill out to help determine whether an accommodation was appropriate; but, Ms. Johnson failed to return it. (Johnson Depo. at 20-21.) Ms. Johnson took additional FMLA leave from December 13 until December 27, 2004; her leave was extended at her request through January 15, 2005. (McDougal Aff. ¶ 10.) Ms. Johnson's physician released her "to return to work starting January 17, 2005 on a full time basis with no restrictions."

Ms. Johnson alleges that, beginning in approximately October 2004, she was subjected to harassment that eventually led to her resignation in January 2005. Ms. Johnson claims that: (1) Ms. Cole and Ms. McDougal frequently criticized her work and questioned her professional competence (Johnson Aff. ¶ 9); (2) Ms. Cole told her that if she could not perform the duties expected of her then she was an unreliable social worker and a liability (Johnson Depo. at 13, 16); (3) Ms. Cole told her that she should seek other employment options (Johnson Aff. ¶ 9); (4) Ms. Cole and Ms. McDougal required her to record her daily activities and

4

meet with a supervisor on a daily basis to prioritize her work assignments (id.); (5) Ms. Cole and Ms. McDougal discussed her medications and improperly disclosed her private medical information (id.); and (6) Ms. McDougal criticized her appearance and was unresponsive to and critical of her office visits (Johnson Depo. at 29-30, 125).

Ms. Johnson resigned on January 19, 2005 to escape what she perceived to be daily harassment and discrimination. (Johnson Depo. at 47.) She is currently working full time as a social worker for the Iredell County (N.C.) DSS. (Johnson Depo. at 98.)

Ms. Johnson filed a Charge of Discrimination with the EEOC on February 11, 2005 and received a "Dismissal and Notice of Rights" on or about March 1, 2005. On May 31, 2005, Ms. Johnson filed a Complaint against the North Carolina Department of Health and Human Services ("DHHS"), Forsyth County, Forsyth County DSS, and Ms. Cole and Ms. McDougal in both their official and individual capacities (collectively, "Defendants"). She seeks declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees and asserts the following claims: (1) harassment due to her disability in violation of Title 1 of the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act ("Title VII"), the North Carolina Persons with Disabilities Protection Act ("NCPDPA"), and the North Carolina Equal Employment Practices Act ("NCEEPA") as to the governmental defendants; (2) constructive discharge in violation of Title 1 of the

5

ADA, Title VII, NCPDPA, and NCEEPA as to the governmental defendants; (3) intentional infliction of emotional distress as to all defendants; and (4) negligent infliction of emotional distress as to all defendants.

Defendants filed a timely Answer denying all relevant allegations and asserting various affirmative defenses. DHHS was dismissed as a party on July 25, 2005. [Doc. # 7.] Discovery has been completed and Defendants contemporaneously filed the pending Motion to Dismiss and Motion for Summary Judgment. Ms. Johnson has responded in opposition and these matters are now ripe for consideration.

II.

The Defendants have filed a motion to dismiss Ms. Johnson's claims against Forsyth County DSS and the individual defendants in their official capacities pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction asserting that such claims are barred by the Eleventh Amendment. The Fourth Circuit has not conclusively established whether a dismissal based on Eleventh Amendment immunity is a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). See Andrews v. Daw, 201 F.3d 521, 525 n.2 (4th Cir. 2000) (citing cases supporting each alternative). However, because the Defendants have presented their motion as one for lack of subject matter jurisdiction, [Doc. # 25 at 4], it will be treated as such. See Alston v. N.C. A &T State Univ., 304 F. Supp. 2d 774, 782 n.7 (M.D.N.C. 2004).

6

It is well established that, with certain exceptions, the Eleventh Amendment prohibits suits against the states. It is also well established that this immunity extends to any state instrumentality that is considered an "arm of the State." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). However, immunity does not extend to "political subdivisions such as counties and municipalities, even though such entities exercise a 'slice of state power.'" Lake Country Estates, Inc v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 401 (1979).

Immunity from suit under the Eleventh Amendment is not absolute. An immunity defense for damages claims is unavailable if: (1) Congress has abrogated a state's immunity pursuant to its powers under the Fourteenth Amendment; or (2) a state has waived its immunity by consenting to suit in federal court. See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). With respect to claims for damages under Title I of the ADA, the Supreme Court has held that the Eleventh Amendment bars private individuals from suing nonconsenting states in federal court and that Congress exceeded its constitutional authority by subjecting nonconsenting states to suits in federal court for money damages under Title I of the ADA. Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 364-74 (2001). Thus, the first exception is inapplicable.

With respect to the second exception, however, the North Carolina state legislature has passed the State Employee Federal Remedy Restoration Act, which

7

clearly provides that the state of North Carolina has waived its sovereign immunity with respect to ADA claims filed by state employees. N.C. Gen. Stat. § 143-300.35 ("The sovereign immunity of the State is waived for the limited purpose of allowing State employees . . . to maintain lawsuits in State and federal courts and obtain and satisfy judgments against the State or any of its departments, institutions, or agencies under . . . the Americans with Disabilities Act."); Candillo v. N.C. Dept. of Corr., 199 F. Supp. 2d 342, 349 (M.D.N.C. 2002).

Since there is no Eleventh Amendment immunity available to Forsyth County and the State of North Carolina has waived its Eleventh Amendment immunity in ADA claims, the motion to dismiss on the argument that Eleventh Amendment immunity divests the Court of subject matter jurisdiction will be DENIED.

III.

Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Cox v. County of Prince William, 249 F.3d 295, 299 (4th Cir. 2001). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Cox, 249 F.3d at 299. There is no

8

genuine issue of material fact if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. Celotex, 477 U.S. at 322-23. In essence, summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence, and the analysis concerns "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

IV.

Ms. Johnson asserts that she was harassed and constructively discharged based on her disability, or perceived disability, in violation of the ADA. In order to make out a claim for harassment under the ADA, Ms. Johnson must show that: (1) she is a qualified individual with a disability; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer. Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001). In order to make out a claim for constructive discharge under the ADA, Ms. Johnson must show that: (1) she has a disability; (2) that she is a qualified individual for the employment in question; and (3) that Defendants discharged her (or took other adverse employment action) because of her disability. EEOC v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 378 (4th Cir. 2000).

9

The threshold issue of both ADA claims is whether Ms. Johnson has a "disability" within the meaning of the statute. The determination of whether a person is "disabled" is an individualized inquiry, particular to the facts of each case. See Sutton v. United Air Lines, Inc., 527 U.S. 471, 483 (1999). The Fourth Circuit has specifically held that the question of whether a plaintiff is disabled is a question of law for the court. See Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) (holding that the disability determination under the Rehabilitation Act is a question of law).[2]

A.

The ADA defines a "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An individual does not qualify as "disabled" simply by submitting evidence of a medical diagnosis of an impairment; rather, evidence must be offered that the extent of the resulting limitation in terms of his or her own experience is substantial. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002) (internal citations omitted).

---

[2] "The ADA and Rehabilitation Act generally are construed to impose the same requirements due to the similarity of the language of the two acts." Baird ex rel. Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999). The definition of "disability" under the Rehabilitation Act is virtually identical to the ADA definition.

10

"Major life activities" are "those activities that are of central importance to daily life and that the average person in the general population can perform with little or no difficulty." Rohan v. Networks Presentations LLC, 375 F.3d 266, 274 (4th Cir. 2004) (internal citations omitted). Examples of "major life activities" include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). According to the regulations that guide the interpretation of the ADA, an impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

Being "regarded as having a such an impairment" means that an employer mistakenly believes: (1) that the employee has an impairment that substantially limits a major life activity; or (2) that an actual, but nonlimiting, impairment substantially limits a major life activity. Sutton, 527 U.S. at 489; see also 29 C.F.R § 1630(l).

B.

Ms. Johnson's opposition papers focus almost exclusively on her ability to work. To be substantially limited in the major life activity of working, a plaintiff must demonstrate that he or she is unable to work in a broad range of jobs. It is

11

not enough to demonstrate only an inability to perform "one type of job, a specialized job, or a particular job of choice." Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 471 (4th Cir.2002) (citing Sutton, 527 U.S. at 491-92). "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton, 527 U.S. at 491-92. Furthermore, the Fourth Circuit has stated that obtaining a new job is evidence that an impairment is not substantially limiting. See Pollard, 281 F.3d at 471 (holding that plaintiff's ability to work for a different employer reinforced that she was not substantially limited in her ability to work).

Ms. Johnson has failed to prove that she is substantially limited in the major life activity of working. Prior to her latest work with Forsyth County DSS, Ms. Johnson was successfully employed without any disability accommodation as a social worker at the Wake Forest University Baptist Medical Center, as an adoption recruiter with the Iredell County DSS, and as a counselor with the Carlbrook therapeutic boarding school. (Johnson Depo. at 115-18.)

Ms. Johnson has made it clear that she was capable of performing the functions and skills of her Social Worker III position with Forsyth County DSS; it was the increased caseload that caused her problems. (Johnson Depo. p.56.) Ms. Johnson was released by her physician to work with no restrictions prior to her

12

resignation from Forsyth County DSS and she began working at both Burger King and Advance Auto within approximately two weeks of her resignation. (Johnson Depo. at 91-93.) Ms. Johnson then briefly worked for Mecklenburg County DSS, and "felt that [she] could do . . . all the jobs that the work required." (Johnson Depo. p. 97-98.) Ms. Johnson is currently working full time with Iredell County DSS and is able to successfully manage her caseload without any type of disability accommodation. (Johnson Depo. at 53.) Thus, Ms. Johnson proved only that she was unable to work in one specific job within one specific organization under a unique set of circumstances.

Other than her ability to work, the only other evidence in the record supporting a finding that Ms. Johnson is substantially limited in a major life activity is her generalized allegations that her bipolar disorder made her: (1) feel agitated, emotional, unmotivated, and isolated; and (2) unable to concentrate, sleep (or to sleep excessively), work, eat, and consistently care for herself. (Johnson Aff. ¶ 7.) These generalized allegations are insufficient to withstand the Defendants' Motion for Summary Judgment. Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997) ("It is not enough that an impairment affects a major life activity; the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is substantially or materially limited.")

In EEOC v. Sara Lee Corp., 237 F.3d 349 (4th Cir. 2001), the Fourth Circuit held that a plaintiff suffering from epilepsy produced insufficient evidence that she

13

was substantially limited as to the major life activities of sleeping, thinking, and caring for herself despite proffered evidence of occasional nighttime seizures and general restless sleep, forgetfulness, and required assistance during and after seizures. The court further noted that the plaintiff failed to demonstrate how her sleeping and thinking abilities differed from that of an average person in the general population. Sara Lee Corp., 237 F.3d at 352-53; see 29 C.F.R. § 1630.2(j)(1)(i)-(ii). The conclusory nature of Ms. Johnson's disability allegations and the complete lack of evidentiary support precludes a finding that she was substantially limited in any major life activity.

In addition, while Ms. Johnson's bipolar disorder and migraines are ongoing conditions, she makes clear in her interrogatory response and affidavit that those conditions are "under control with medication." (Pl.'s Resp. To Defs.' Interrog. # 1.b.; Johnson Aff. ¶ 5.) In determining whether an individual is substantially limited in a major life activity, mitigating measures such as medication and assisting devices must be taken into account. Sutton, 527 U.S. at 482. "[A] person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t]' a major life activity." Id. As such, Ms. Johnson's medical problems do not rise to the level of substantially limiting.

Finally, Defendants were aware of Ms. Johnson's bipolar disorder, but it is evident from the record that they did not believe that her impairment substantially

14

limited a major life activity. As discussed above, Ms. Johnson acknowledged her ability to perform the functions and skills of her position, her physician twice released her to work with no restrictions, and her supervisors entrusted her with a substantial caseload.

Therefore, Ms. Johnson is not "disabled" within the meaning of the ADA and Defendants' Motion for Summary Judgment on Ms. Johnson's harassment and constructive discharge claims under the ADA is GRANTED.

V.

For the reasons stated above: Defendants' Motion to Dismiss Ms. Johnson's ADA claims for lack of subject matter jurisdiction [Doc. #23] is DENIED; Defendants' Motion to Dismiss Ms. Johnson's Title VII claims for failure to state a claim [Doc. # 23] is GRANTED; Defendants' Motion to Dismiss Forsyth County as a party [Doc. #23] is DENIED AS MOOT; and Defendants' Motion for Summary Judgment on Ms. Johnson's ADA claims [Doc. #26] is GRANTED. All state law claims are DISMISSED because the Court declines to exercise supplemental jurisdiction.

This the day of September 29, 2006

                                            /s/ N. Carlton Tilley, Jr.
                                            United States District Judge